IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NICOLE SIEGER, for and on behalf of S.S., a minor; ALONZO LIDDELL and LISA LIDDELL, for and on behalf of J.L., a minor; and KIMBERLY OLSEN, for and on behalf of N.M., a minor;<br><br>      Plaintiffs,<br><br>vs.<br><br>DAVIS COUNTY SCHOOL DISTRICT, a county school district; CASSIE GRETHER, an individual; TRACY NOLAN, an individual; and MARTIN HARDY, an individual<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF SECOND AMENDED COMPLAINT<br><br>Case No. 1:22CV48 DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants' Motion for Dismissal of Second Amended Complaint. On October 25, 2022, the court held a hearing on the motion via Zoom videoconferencing.  At the hearing, Bradley R. Blackham and Peter J. Strand represented Defendants Davis County School District ("the District"), Cassie Grether, Tracy Nolan, and Martin Hardy (the "Individual Defendants") (collectively "Defendants"). Aaron K. Bergman represented Plaintiffs Nicole Sieger, for and on behalf of S.S., a minor; Alonzo Liddell and Lisa Liddell for an on behalf of J.L., a minor; and Kimberly Olsen, for an on behalf of N.M., a minor. After hearing arguments from the parties, the court took the motion under advisement. Having carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order. For the reasons

1

explained below, the court grants in part and denies in part Defendants' Motion to Dismiss the Second Amended Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the court assumes the truth of "all well-pleaded facts in the complaint, and draw[s] all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## FACTUAL AND PROCEDURAL BACKGROUND

Based on the alleged racial harassment and discrimination of three Black students within the Davis County School District, Plaintiffs have filed a civil rights action pursuant to Title VI of the Civil Rights Act of 1964.[1] Plaintiffs have also asserted a breach of contract action seeking enforcement of a settlement agreement entered into between the United States Department of Justice (the "United States") and the Davis County School District. On September 15, 2021, the United States issued a Notice of Findings of Race Discrimination in the Davis

---

[1] Under 42 U.S.C. § 2000d, Title VI of the Civil Rights Act of 1964 demands: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

school District.[2] The United States "found severe, pervasive, and objectively offensive race-based harassment" was regularly committed "in schools across the District" by students against other students. The United States also found "severe, pervasive, and objectively offensive race-based harassment by staff in several District schools and services." In addition, the United States found that the District violated the rights guaranteed to its Black students under the Equal Protection Clause of the Fourteenth Amendment, and these pervasive violations had occurred through the District's "discriminatory enforcement of its codes of conduct and referrals to law enforcement." As a result of the United States' findings of pervasive racial discrimination occurring throughout the District's schools, on October 20, 2021, the United States and the District entered into a Settlement Agreement.[3]

Under the Settlement Agreement, the District promised to "take all necessary and reasonable steps, consistent with Federal law, to end racial harassment, prevent its recurrence, eliminate any racially hostile environment that currently exists in its schools, programs, and activities, and remedy its effects." The District agreed to take multiple steps in furtherance of the above promise. Knowing that the above material changes would take time to implement, the District agreed to create an "Interim Plan" which would be submitted to the United States no later than November 1, 2021. Furthermore, the District would "take immediate steps to ensure a prompt and equitable response to racial harassment and other discrimination and

---

[2] The Notice of Findings of Race Discrimination in the Davis School District is attached to the Complaint as Exhibit 1. ECF No. 21-1.

[3] The Settlement Agreement is attached to the Complaint at Exhibit 2. See ECF No. 21-2.

create interim procedures for responding to and tracking incidents of racial discrimination as well as for assuring appropriate accountability for such occurrences.

Notwithstanding the District's Settlement Agreement with the United States, Plaintiffs allege that the three minor students on whose behalf the instant Complaint was filed (hereinafter referred to as the "Student Plaintiffs") continued to experience unimpeded racial harassment by students on a daily basis, being called "cotton picker," the "N" word, "monkey," and "Poo-Skin"; hearing students make "monkey" sounds toward them on the bus and at school; being informed that Black History Month was being cut short; having other students touch their hair without permission; and hearing students ask for an "N-word pass" so students could freely use racially derogative expletives toward them. The Student Plaintiffs claim that they were told on a daily basis, both figuratively and literally, that "white people are better" and "you're a slave" and to "go back to where you came from." The Student Plaintiffs also make several allegations of specific incidents involving discriminatory treatment, while District employees allegedly treated the White students involved in these incidents completely differently.

In their Second Amended Complaint, Plaintiffs assert three causes of action: (1) intentional discrimination in violation of Title VI (against the District); (2) a § 1983 claim for violation of Title VI and for violation of the Equal Protection Clause (against all Defendants); and (3) a breach of contract claim based on the Settlement Agreement (against the District).

Through the instant motion, Defendants move the court to dismiss the Second and Third Causes of Action for failure to state a claim upon which relief can be granted. Specifically, Defendants argue that the Second Cause of Action (a § 1983 civil rights claim) should be dismissed to the extent the cause of action is subsumed by Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.[4] Additionally,

---

[4] Defendants appropriately concede in their Reply Memorandum {ECF No. 49] that Plaintiffs' claim under 1983 is based on an alleged violation of the Equal Protection Clause (as opposed

they argue that the Third Cause of Action (a breach of contract claim) should be dismissed on two bases: First, Defendants contend that S.S., J.L., and N.M. are not third-party beneficiaries to the Settlement Agreement between the District and the United States; and second, they argue that Plaintiffs have not sufficiently alleged a breach of contract claim. Defendants have not moved to dismiss the First Cause of Action, which is Plaintiffs' claim against the District for intentional discrimination in violation of Title VI, and thus the First Cause of Action is not at issue in this motion.

## DISCUSSION

### 1. Section 1983 Claim Based on Title VI

Defendants argue that Plaintiffs' attempt to assert a cause of action under 42 U.S.C. § 1983 for both an alleged violation of Title VI and for an alleged violation of the Equal Protection Clause must fail. While Defendants have properly conceded that Plaintiffs' § 1983 cause of action may be premised on the Equal Protection Clause, Defendants contend that Plaintiffs' separate § 1983 cause of action premised on Title VI must fail.

Statutes that are enacted under the Spending Clause, such as Title VI, invoke Congress's power to place conditions on the grant of federal funds. *See Barnes v. Gorman*, 536 U.S. 181, 185–86 (2002). Congress has enacted four statutes under the Spending Clause that prohibit recipients of federal financial assistance from discriminating based on certain protected grounds. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1569 (2022), *reh'g denied*, No. 20-219, 2022 WL 2203449 (U.S. June 21, 2022). Title IX is another example of a statute that prohibits recipients of federal financial assistance from discrimination based on certain protected

---

to an alleged violation of Title VI) and is therefore not foreclosed by caselaw and survives the motion to dismiss.

5

grounds. "Title IX was patterned after Title VI of the Civil Rights Act of 1964." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979). This similarity is demonstrated by the fact that "the two statutes use identical language" and "provide the same administrative mechanism for terminating federal financial support for institutions engaged in prohibited discrimination." *Id.* at 695-96.

When the Supreme Court in *Cannon* decided whether to imply a private right of action to Title IX, the Court looked to the rights of action in Title VI. The Supreme Court held that Congress drafted Title IX to have the same remedies as Title VI: "We have no doubt that Congress intended to create Title IX remedies comparable to those available under Title VI." *Id.* at 703. The Court recognized that when Congress passed Title IX in 1972, Congress "was under the impression that" Title IX "would be similarly enforceable" to Title VI's private actions. *Id.* at 710-11. Moreover, "[t]he drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years." *Id.* at 696.

An analysis of whether a § 1983 claim may be based on an alleged violation of Title VI is controlled by the Tenth Circuit's decision in *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996) (citing *Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir. 1989)). *Seamons* arose from a hazing incident involving a high school student. *Id.* at 1229. The plaintiffs asserted a claim that the school district and school violated Title IX as well as a claim under § 1983 for alleged violations of several constitutional rights, including equal protection. *Id.* at 1230. The district court dismissed both claims after concluding that the plaintiffs had failed to allege sufficient facts to support a Title IX claim and also failed to demonstrate that the student at issue was deprived of any constitutional right. *Id.* at 1231.

On appeal, the Tenth Circuit concluded that Title IX does not foreclose the plaintiffs from bringing a § 1983 action for alleged violations of their independently asserted constitutional claims, i.e.,

6

an equal protection claim.[5] *Id.* at 1234. In reaching this conclusion, however, the Tenth Circuit made it clear that "the 1983 action could not be predicated on a violation of Title IX itself." *Id.* at 1234 n. 8.[6]

Plaintiffs have provided no direct support for their argument that they can maintain a § 1983 cause of action based on Title VI. Indeed, the court is unaware of any court in the country that has recognized such a claim. Because the Tenth Circuit has concluded that a § 1983 claim may not be based on Title IX itself, and Title IX was patterned after Title VI, the Tenth Circuit would likely not recognize a § 1983 claim based on Title VI. Accordingly, this court will not recognize such a cause of action, and the claim is therefore dismissed.

**2.    Breach of Contract Claim**

Defendants argue that Plaintiffs' breach of contract claim fails because Plaintiffs were not intended third-party beneficiaries to the Settlement Agreement between the District and the United States. "Third-party beneficiaries are persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration." *Carmona v.*

---

[5] In 2009, the United States Supreme Court resolved a split of lower court rulings and clarified that Title IX does not foreclose a separate § 1983 claim based on the Equal Protection Clause. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009). Notably, in its analysis of the issue, the Supreme Court relied on legal authority interpreting Title VI after recognizing that Congress "modeled Title IX after Title VI." *Id.* The Supreme Court specifically noted that at the time of Title IX's enactment, courts routinely interpreted Title VI to allow for parallel and concurrent § 1983 claims based on alleged violations of constitutional rights. *Id.*

[6] Moreover, even if a § 1983 could be used as a vehicle for redressing a Title VI violation, liability is limited to entities and not individuals. Accordingly, even if Plaintiffs in the instant case could assert a § 1983 claim premised on Title VI, the claim could not be asserted against the Individual Defendants.

*Travelers Cas. Ins. Co. of Am.*, 2018 UT App 128, ¶ 10, 428 P.3d 65 (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 47, 28 P.3d 669).

To determine whether a party has third-party beneficiary status, courts first look to the written contract. *Wagner v. Clifton*, 2002 UT 109, ¶ 11, 62 P.3d 440, 442. "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Doyle v. Jewell,* No. 2:13-CV-861-CW, 2015 WL 1609132, at *3 (D. Utah Apr. 10, 2015) (citing *Wagner v. Clifton*, 2002 UT 109, ¶ 12, 63 P.3d. 440) (unpublished). "For a third party to have enforceable rights under a contract, the intention of the contracting parties to confer a *separate and distinct benefit* upon the third party must be clear." *Carmona,* 2018 UT App 128, ¶ 10 (quotation simplified, emphasis in original). Moreover, "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the [contract]. . . . The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." *Lilley v. JP Morgan Chase*, 2013 UT App 285, ¶ 5, 317 P.3d 470, 472 (alterations in original) (internal quotation marks omitted); *see also Carmona,* 2018 UT App 128, ¶ 10. And "only if the written contract's clear intent is to confer rights upon a third party may that third party enforce rights and obligations of the contract." *Wagner,* 2002 UT 109, ¶ 13, 62 P.3d 440.

A reasonable interpretation of intent is one "that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." *Equine Holdings LLC v. Auburn*

*Woods LLC*, 2021 UT App 14, ¶ 26, 482 P.3d 880 (quoting *Brady v. Park*, 2019 UT 16, ¶ 55, 445 P.3d 395). "[A] party only incidentally benefitted has no right to recover under the contract." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 47, 28 P.3d 669; *see also Franklin Templeton Bank & Tr. v. Butler*, No. 2:15-CV-435-JNP-EJF, 2016 WL 3129141, at *4 (D. Utah June 2, 2016) ("An incidental, indirect, or inconsequential benefit to a third party is insufficient to demonstrate an intent to create a contract directly obligating the promisor to perform a duty to a third party.") (unpublished).

It is well established that courts can look to the language in the contract and determine intent at the motion to dismiss stage. The Utah Supreme Court has stated:

> Under well-accepted rules of contract interpretation, we look to the language of the contract to determine its meaning and the intent of the contracting parties. We also "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." Where "the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.

*Cafe Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235 (quoting *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134).

Having carefully reviewed the Settlement Agreement at issue in this case, the court cannot discern a clear intention to confer a *separate and distinct benefit* upon the plaintiffs. The "Introduction" section affirmatively states that the Settlement Agreement's purpose is to resolve the United States' findings of its investigation into allegations of race discrimination against students in the District. Under the terms of the Settlement Agreement, the District is required to:

9

- hire at least one third party consultant to assist it in complying with the terms of the Settlement Agreement;[7]
- create an Office of Equal Opportunity;[8]
- develop a central reporting/complaint management system;[9]
- issue a district wide notice to all students, parents, and staff stating its commitment to creating and maintaining an environment free from harassment;[10]
- develop a plan to engage students, parents, and community members in its efforts to create a discrimination and harassment free learning environment;[11]
- review and assess all District and school level policies, practices, and procedures related to racial harassment;[12]
- implement trainings on preventing and addressing racial harassment and discriminatory discipline practices;[13] and
- submit bi-annual reports to the United States.[14]

Each step has exhaustive requirements and timelines required to successfully comply with the Settlement Agreement. The language grants the United States control of determining whether the District has fulfilled the terms of the Settlement Agreement. Of particular note, the Settlement Agreement requires the United States to inform the District in writing of concerns it may have regarding the District's compliance, and in that event, "the parties will act in good

---

[7] Settlement Agreement, Exhibit 2, ¶¶ 2-7. *See* ECF No. 21-2.
[8] *Id*. at ¶¶ 8-17.
[9] *Id*. at ¶¶ 18-26.
[10] *Id*. at ¶¶ 27-30.
[11] *Id*. at ¶¶ 31-39.
[12] *Id*. at ¶¶ 40-43.
[13] *Id*. at ¶¶ 44-47.
[14] *Id*. at ¶¶ 48-52.

faith to resolve those concerns."[15] This language demonstrates that the District and the United States explicitly intended for the Settlement Agreement to be a resolution of the issues between the two parties, and not to confer a separate and distinct benefit upon S.S, N.M., J.L., or any other individual.

Moreover, the structure of the Settlement Agreement shows that the parties intended to exclude any third parties from enforcing it. Under its terms, only the United States retains the right to investigate and initiate enforcement proceedings concerning alleged violations.[16] Additionally, the Settlement Agreement remains in effect until the United States determines the District has fully complied with its provisions and obligations.[17] The requirement that the United States and the District act in good faith to resolve issues and concerns[18] reinforces the notion that the parties affirmatively intended for only the United States to be able to enforce the Settlement Agreement. Recognizing a third-party beneficiary status for individual students would open the door for each individual Black or Asian American student to bring an individual breach of contract claim, even if there were no harm to them. Allowing individual students to bring suit for violations of the Settlement Agreement would lead to untenable results that the parties could not reasonably have intended. Thus, the breach of contract claim fails as a matter of law and is dismissed.[19]

---

[15] *Id*. at ¶ 50.
[16] *Id*. at ¶¶ 50, 56.
[17] *Id*. at ¶ 56.
[18] *Id*. at ¶¶ 50, 56.
[19] As a separate and independent argument, Defendants also contend that Plaintiffs have not properly pled that Defendants have breached their contractual obligations under the

### 3. J.L.'s Claim for Injunctive Relief

Defendants argue that because J.L. is no longer a student in the District, his claim for injunctive relief is moot and should be dismissed. The court disagrees and declines to dismiss J.L.'s claim for injunctive relief at this early stage of the litigation.

### CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss [ECF No. 38]. To the extent Plaintiffs' Second Cause of Action is based on a violation of Title VI, the claim is DISMISSED, and Plaintiffs' Third Cause of Action for claim for breach of contract is DISMISSED. Plaintiffs § 1983 claim based on the Equal Protection Clause remains, as does their First Cause of Action for Violation of Title VI.

DATED this 13th day of December, 2022.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

Settlement Agreement. In light of the court's conclusion on the third-party beneficiary theory, this argument is moot.